CASE NO: 20-01086-RAM

Maria T Dunn, Chapter 7 Trustee of the Bankruptcy Estate of Alejandro Fabia Scolnik

V

Pablo Guillermo Barreiro

At your request attach the following documents:

1.- General Realease original
2.- Operating Agreement Brickel Restaurante LLC (Santa Fe BCC) see Item 11 : Designation at Pablo G Barreiro as Controller.
3.- Consolidation Debts of Mr Scolnik
4.- Auditory at Yellowstone (Financial Group)
5.- Some emails that prove my work for Mr Scolnik during 2 years.
6.- Financial Analysis of all businesses of Mr Scolnik
7.- Final summary of the audit of Five Towers and emails with them and Mr Scolnik's lawyer. For this job Mr Scolnik had a debt reduction of $ 600,000.00.
8.- Audit of HMF GROUP in this case Mr Scolnik obtain a debt reduction of $50,000.00

04/30/2020

U.S. BANKRUPTCY COURT
SO DISTRICT OF FLORIDA Miami

MAY - 4 2020

FILED_____ RECEIVED

U.S. BANKRUPTCY COURT
SO DISTRICT OF FLORIDA-Miami

MAY - 4 2020

FILED_____ RECEIVED_____

ADVERSARY CASE NO: 20-01086- RAM

Marcia T Dunn, Chapter 7 Trustee of the Bankruptcy Estate of Alejandro Fabian Scolnik

V.

Pablo Guillermo Barreiro

## Motion to dismiss

I want to start by explaining why I took so long to answer directly to the court, even that I am not in default because i never was served in person, Also I communicate this to Barry S Turner Eq since on several occasions I responded him by emails, who so kindly provided me with information specifying that even if I do not have a lawyer or money, I have the right to make a discharge directly in the court.

I understand that the judicial processes continue to progress despite the pandemic, but due to my age (72 years) and my health problems, I am obliged to remain in quarantine. For this reason, I could not go to the court on the day of the hearing and my English is not good for a hearing by phone and to be honest I didn't want to generate any confusion about it. Once again, I want to make clear that I am not in default and in different cases they give an extension on special circumstances, and I believe the pandemic is one of those special circumstances.

As I mentioned earlier, I do not have a lawyer and I am not going to put one on because I do not have the money and even less at this difficult time. So, I will try to explain everything, attaching proof and try to be clear.

1. In December 2016 the Promissory Note is signed between Alejandro Scolnik and me. It represents an advance fee payment of $ 80,000.00 as agreed between Alejandro Scolnik and me. I asked him to pay me in advance since he had several problems with different people and I did not want to risk working without receiving payment. To which he accepted and both signed the promissory note that he prepared.

2. I Perform the following tasks that were assigned to me according to the verbal agreement that I had with Alejandro Scolnik:

    2.1. Controlled all the payments that had to be made to the suppliers, as well as the employees, raw materials, sba loan, etc., so they can be made in due time and form due to the existing problems of Alejandro Scolnik.

    2.2. Consolidate debts of: Rent and distributers. Analysis of each account he had in his different business with different distributors (Sysco, Gordon Foods, Coca-Cola, Ricardo Bakery, etc) and the

amount dues of those accounts, meetings and put together payment plans that are tailored to the financial possibility of each business Alejandro Scolnik had.

2.3. Advices for the completion of the construction and getting habilitation of Santa Fe in Brickell City center.

2.4. Manage the approval of Five Towers (Alejandro Scolink's private lender) for the incorporation of Gimi Group as a new partner of Santa Fe in brickell city center.

2.5. Finalizing my agreed tasks with Alejandro Scolnik, I performed a financial audit of all Alejandro Scolnik businesses (Piacere News & Café, Santa Fe News & Café, Epicure, Santa Fe in Brickell City Centre) due to the monthly deficit of each business. This audit was given to Alejandro Scolnik as a finalization, for which reason I was hired and considered the advance payment for my fees as settled.

3. In April 2018 my agreed tasks with Alejandro Scolnik are concluded. After having seen many irregularities, meaningless documents, I asked Alejandro Scolnik to sign me a general release.

4. The general release was made by me in the office of Alejandro Scolnik (Santa Fe News & Cafe Bal Harbor) since, as I mentioned on several occasions, I did not have a lawyer. I understand that it is not the corresponding format or it may have grammar errors due to my low level of English, but both Alejandro Scolnik and I consider it valid and we both understood that it was to cancel the promisorry note. That same day that we signed the general release, we gave intervention to Mr. Fernando Gestal, who signed as a witness.

To finalize my discharge and answer the claim,I attached some emails as proof of what I mentioned above. Also, I would like to request that you dismiss me from the case, since I fulfilled my agreed work and I have a general release signed by Mr. Alejandro Scolnik. That you can communicate with Alejandro and Fernando Gestal to confirm what I am saying. I also understand that my response was not the fastest and took several days to answer, but I never hid, I always answered the emails, I sent the general release, when everything about the pandemic started, I could not go to court since I am 72 years old with health problems and I'm at high risk of getting infected. I remain at your disposal.

Thank you so much.

Best Regards,

Pablo Barreiro

WITHDRAW AND GENERAL RELEASE PABLO BARREIRO AND BRICKELL
RESTAURANTE LLC

I hereby I present my WHITDRAW as Controller of Brickell Restaurant LLC.
Also, this document gives me a General Realese about everything that has
been done as Controller until today. Not having anything to claim from me
and neither from Brickell Restaurant LLC.

Pablo Barreiro

Alejandro Scolnick
Brickell Restaurante LLC

Fernando Gestal
Brickell Restaurante LLC

## OPERATING AGREEMENT OF
## BRICKELL RESTAURANTE LLC

THIS OPERATING AGREEMENT (the "Agreement") of BRICKELL RESTAURANTE LLC, a Florida limited liability company ("BR") Also is entered into as of this ⅔ day of CCX , 2017, by and between GIMI GROUP LLC ("GG")., a Florida LLC company and ALEJANDRO SCOLNIK ("AS") (collectively known as the "Members").

WHEREAS, the Members desire to participate together as a limited liability company formed under the Florida Limited Liability Company Act to engage in the business described in this Agreement; and

WHEREAS, the Members desire to express in writing their mutual understandings and agreements with respect to the formation and operation of the Company; and

WHEREAS, the Members believe that, the best means to accomplish the foregoing is to supersede any prior agreements or understandings among them by setting forth in this Agreement all the terms, provisions, conditions and covenants by which the Company will be governed.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and conditions contained herein, the parties hereto, intending to be legally bound, hereby agree as follows:

### 1. MEMBERS

1.1.    Meeting of Members. The Members shall meet annually or whenever the majority of the Members so require to discuss the operations and progress of the Corporation, and to transact such other business as may properly come before meeting. The meeting shall be held on the date at such place and at such time as the Members elect.

1.2.    Voting by Members. All Members of the Company are entitled to vote on matters relating to the Company. Each member's vote shall be weighted in proportion to the Member's Voting Units, listed on Exhibit A.



## 2. MANAGEMENT

2.1.     Manager. Except as otherwise provided in this Agreement, the business and affairs of the Company shall be managed under the direction of the Manager. Notwithstanding.

the foregoing, the rights of the Manager shall be subject to the provisions of Section 2.4 with respect to the approval of unanimous (as hereinafter defined). Furthermore, "GG" may designate a Controller who shall supervise and have control over the Manager. The Manager of the Company shall be designated by "GG".

2.2     Removal of Manager. By "GG" desicion, the Manager may be removed as Manager of the Company. Upon the Manager's removal, "GG" shall appoint, a new Manager to manage the operations of the Company.

2.3.     Manager Decisions. The overall management and control of all aspects of the business and operations of the Company shall be vested exclusively in the Manager, subject to the provisions of Section 2.4. The Manager shall have all the rights and powers provided in this Agreement and the Law and any action taken by the Manager shall constitute the act of and serve to bind the Company. The Manager shall conduct the day-to-day operations of the Company,

The Manager shall use good faith efforts to carry out the business of the Company as set forth herein. Subject to any limitation set forth by the Law or this Agreement, the Manager is authorized to execute and deliver, for and on behalf of the Company, such agreements or instruments as the Manager may deem necessary or desirable, and the execution of such agreements, instruments or other documents by the Manager shall be sufficient to bind the Company whit the prior approval of the Controller.

All the decisions described must be previously approved by the Controller.

2.4     Member Decisions. Notwithstanding anything to the contrary in the Agreement or the Act, no act shall be taken or sum expended or obligation incurred by the Company or the Manager with respect to a matter within the scope of any of the unanimous decisions (each a "Major Decision") affecting the Company, unless each such Major Decision has been approved by the unanimous of the Members. The Major Decisions shall be to:

a) do any act in contravention of this Agreement;

 

b) knowingly do any act which would make it impossible to carry on the ordinary business of the Company, except as otherwise provided in this Agreement;

c) cause the Company to voluntarily take any action that would cause a Bankruptcy of the Company;

d) reconstitute the Company and continue its business following a dissolution of the Company; and

e) knowingly perform any act that would subject any Member to liability as a general partner in any jurisdiction;

f) requiring Additional Capital Contributions from the Members.

### 3. LIABILITY OF MANAGER AND MEMBERS.

3.1.   Neither the Members nor the Manager are liable under a judgment, decree or order of a court or in any other manner, for a debt, obligation or liability of the Company, except as provided in Florida Statutes.

### 4. ADMISSION AND TRANSFERABILITY OF MEMBERSHIP; FRANCHISE.

4.1.   Admission. Unless otherwise provided in this Agreement, a Member's Interest in the Company is not assignable in whole or in part, unless the Members consents to the assignment. Thus an assignee of an interest in the Company may not become a Member unless all other Members consent. As assignee who has become a Member has, to the extent assigned, the rights and powers, and is subject to the restrictions and liabilities, of the assignor under this Agreement and Florida law. If an individual member dies or is adjudged incompetent to manage his person or his property by a court of competent jurisdiction, the Member's legal representative may exercise all the Member's rights for the purpose of settling such Member's estate or administering such Member's property, including any power the Member had to give an assignee the right to become a Member. If a non-individual member is dissolved or terminated, the powers of that Member may be exercised by its legal representative or successor.

4.2   Franchise. If the Company elects to open a franchise or license the Company's trademark with or to another company, such new company shall be structured




in one of two ways: (1) if AA elects to be part of the new franchise, with the exact same members, percentage of capital contribution, percentage of profit interest, voting units, and distribution as this Company or as otherwise mutually agreed upon by the Members; or (2) if AA elects not to be part of the new franchise, then as AS solely decides.

## 5. CAPITAL CONTRIBUTIONS

5.1.   Initial Capital Contribution.   Each Member shall contribute to the Company, his or its Initial Capital Contribution as set forth in Exhibit "A".

5.2.   Additional Capital Contributions.   The Members acknowledge that additional equity may be required, after the first month of operations of the restaurant, whether as a result of future opportunities or otherwise. If the Members determine that the Company is in need of funds for operational and/or capital needs of the Corporation, or to otherwise meet the obligations of the Corporation (each a "Capital Call"), then the Manager shall call for Additional Capital Contribution by deliver a written notice to the Members describing amount of Additional Capital Contributions required by all Members, the proposed application of the proceeds of such capital contribution and each Member's pro rata share based on the Member's Percentage of Profit Interest. Each Member shall be required, within thirty (30) days after receipt of such Capital Call (unless otherwise provided therein), to contribute to the capital of the Company an amount in cash equal to such Member's pro rata portion (based on such Member's Percentage of Profit Interest at the time of such Capital Call) of such Capital Call.

5.3   Dilution.   In the event a Member fails to make an Additional Capital Contribution (the "Defaulting Member") then the other Members shall have the right, but not the obligation, to make the Additional Capital Contribution instead of the Defaulting Member. The acceptance of Additional Capital Contributions from some but not all of the Members, shall result in dilution of the Percentage of Profit Interests and Voting Units of those Members that do not make Additional Capital Contributions. The Defaulting



Member's Percentage of Profit Interest and Voting Units shall be diluted according to the following formula:

Additional Capital Contribution / total Capital Contributions made by all Members through the date of the calculation = Y

Y x original Percentage of Profit Interest = D

original Percentage of Profit Interest – D = N (new diluted Percentage of Profit Interest)

## 6. DISTRIBUTIONS & PROFITS AND LOSSES

6.1.    Distribution of Net Cash and Net Proceeds of a Capital Transaction. Net Cash and Net Proceeds of a Capital Transaction shall be distributed to the Members as follows:

(i) First, until such time as the Unreturned Capital Contribution of the Members is zero

(ii) Thereafter, distributions shall be made pro-rata in accordance with the respective Member's Percentage of Profit Interest.

## 7. VOTING

7.1 Voting. Each Voting Unit shall entitle the holder thereof generally, unless otherwise provided for herein, a right with all other Voting Unit holders to vote on matters requiring the Approval of the Members. The Voting Units shall be the same as a Member's Percentage of Profit Interest.

## 8. MISCELANEOUS

8.1.    Amendments.  Any amendment of the Articles of Organization of the Company or to this Agreement shall require the unanimous vote of all the Members.

8.2.    Notices.  All notices shall be in writing, and shall be sufficiently given if delivered to the addressee in person, by Federal Express or similar receipted delivery, by certified mail, return receipt requested, or by e-mail to the address set forth in Exhibit



"A" to this Agreement or at such other address as any Member shall designate in writing to the Manager.

8.3    Arbitration. Any dispute, controversy or claim arising out of or related to this Agreement or any breach of this Agreement shall be submitted to and decided by binding arbitration.

## 9. DEFINITIONS

For purposes of this Agreement, the following terms are defined as follows:

9.1    Additional Capital Contributions. Any amounts of cash and/or property contributed to the capital of the Company by a Member, pursuant to Section 5.1 of this Agreement. The Additional Capital Contributions shall not include the Initial Capital Contributions.

9.2.    Affiliate. With respect to any Person, (i) any Person directly or indirectly controlling, controlled by, or under common control with such Person, (ii) any officer, director, shareholder, member or partner of such Person, (iii) any Person who is an officer, director, shareholder, member, partner, trustee or employee of any Person described in clauses (i) and (ii) of this paragraph, or (iv) any child, grandchild (whether through marriage, adoption or otherwise), parent, brother, sister or spouse of a Person. For purposes of this definition, the term "controls," "is controlled by," or "is under common control with" shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

9.3.    Capital Contribution. As to each Member, the Initial Capital Contribution together with all additional capital contributed to the Company by such Member pursuant to this Agreement.

9.4    Capital Transaction. A Capital Transaction is either an Interim Capital Transaction or a Terminating Capital Transaction.

9.5    Cause (i) the occurrence of a fraudulent act by the Manager as determined by a court of competent jurisdiction, (ii) the occurrence of any act or omission which is determined by a court of competent jurisdiction to constitute gross negligence or willful



misconduct by the Manager, or (iii) the determination by a court of competent jurisdiction that the Manager is mentally incapacitated.

9.6.    Initial Capital Contribution. As to any Member, the amount of cash or property initially contributed in exchange for the interest set forth opposite such Member's name on the attached Exhibit "A" under the heading "Initial Capital Contribution."

9.7.    Interim Capital Transaction. A transaction pursuant to which the Company borrows funds or refinances existing debt, a sale, condemnation, exchange, abandonment or other disposition of a portion (which is less than substantially all) of the assets of the Company, an insurance recovery or any other transaction, other than a Terminating Capital Transaction, that, in accordance with generally accepted accounting principles, is considered capital in nature. 9.8.    Member. Any person who becomes a member of the Company pursuant to the terms of the Agreement. "Members" means all such persons

9.9.    Membership Interest; Interest; or Member's Interest. The entire ownership interest of a Member in the Company at any time and the right of such Member to any and all benefits to which a Member may be entitled as provided in this Agreement, together with the obligations of such Member to comply with all of the terms and provisions of this Agreement. The Interest of each Member shall include each Member's Voting Units and Percentage of Profit Interest allocated to each Member as reflected on Exhibit "A" of this Agreement, as may be amended from time to time.

9.10.    Net Cash. The gross cash which the Company has "on-hand," less amounts used to pay or establish reserves for all Company expenses, principal and interest payments on indebtedness of the Company, capital improvements, capital replacements and contingencies, all as determined by the Manager. Net Cash shall not be reduced by Depreciation or similar allowances, but shall be increased by any reductions of reserves previously established.

9.11.    Net Proceeds of a Capital Transaction. The proceeds received by the Company in connection with a Capital Transaction after payment of all costs and expenses incurred by the Company in connection with such Capital Transaction, including, without limitation, brokers' commissions, loan fees, loan payments, other



closing costs, payment of any Company indebtedness intended to be repaid if the Capital Transaction is a financing or refinancing, and further reduced by any capital reserves deemed necessary or appropriate by the Manager, and by any amounts reinvested or held for reinvestment by the Manager for the Company's business.

9.12.  Percentage of Capital Contribution. The Capital Contribution of each Member, expressed as a percentage, at any particular time.

9.13.  Percentage of Profit Interest. The percentage of profits allocated to each Member as reflected on Exhibit "A" of this Agreement. Profits and Losses shall be allocated and distributions made to the Members based on each Member's Percentage of Profit Interest.      9.14.  Person.    Any    individual,    corporation,    association, partnership (general or limited), joint venture, trust, estate, limited liability company or other legal entity or organization.

9.15.  Terminating Capital Transaction. A sale, condemnation, exchange or other disposition, whether by foreclosure, abandonment or otherwise, of all or substantially all of the then remaining assets of the Company or a transaction that will result in a dissolution of the Company.

9.16    Unreturned Capital Contribution. At any given time, with respect to each Member, the amount of Capital Contributions such Member has contributed to the Company, less the amount, if any, of Capital Contributions which have been returned to such Member pursuant to Sections 6.1.

9.17    Voting Units. The number of voting interest each Member has within the Company.  Each Voting Unit shall entitle the holder thereof generally to one vote on matters requiring the Approval of the Members or as otherwise provided for herein. The number of Voting Units for each Member is shown on Exhibit "A" of this Agreement.

## 10.DEBTS

10.1 All the debts: loans, private lenders, interests, vendors, taxes, services, etc  before at this Operating Agreement will be pay by ALEX SCOLNIK.



The Company can use the "AS" profit for to pay the "AS" debts. In the case that the "AS" profit is not sufficient "AS" must to put the difference.

10.2 In the event that the Business or the Company is sold "AS" will pay all the debts before at this Operating Agreement of his percentage. At closing the Company hold the all the debts amounts of "AS" percentage.

## 11.CONTROLLER

1.1      "GG" will designate a person as controller to control all financial movements: payments, sales and banks accounts. Also this person will have the control of the business and the power over the Manager for to take decisions described in 2.3

*[SIGNATURES FOLLOW ON THE NEXT PAGE]*



requiring the Approval of the Members or as otherwise provided for herein. The number of Voting Units for each Member is shown on Exhibit "A" of this Agreement.

## 10.DEBTS

10.1 All the debts: loans, private lenders, interests, vendors, taxes, services, etc before at this Operating Agreement will be pay by ALEX SCOLNIK.

The Company can use the "AS" profit for to pay the "AS" debts. In the case that the "AS" profit is not sufficient "AS" must to put the difference.

10.2 In the event that the Business or the Company is sold "AS" will pay all the debts before at this Operating Agreement of his percentage. At closing the Company hold the all the debts amounts of "AS" percentage.

## 11.CONTROLLER

11.1 "GG" will designate a person as controller to control all financial movements: payments, sales, open banks accounts, etc. Also this person will have the control of the business and the power over the Manager for to take decisions described in 2.3

11.1 PABLO G BARREIRO is appointed as CONTROLLER and GIMI GROUP LLC give him a GENERAL POWER OF ATTORNEY to sign on your behalf except for sale of your interest in the Company. He can only be removed by unanimous vote.

*[SIGNATURES FOLLOW ON THE NEXT PAGE]*

8

IN WITNESS WHEREOF, the parties have exacted this Agreement on the year and date above written.

**MEMBERS:**

**ALEJANDRO SCOLNIK**

Signature: _____
Name: Alejandro Scolnik

**GIMI GROUP LLC**

Signature: _____
Name: Nicole Delance
       Overseas Solutions

Notary Public State of Florida
Nieves Conde
My Commission FF 158045
Expires 08/02/2018

KNOWN TO ME

## EXHIBIT A

| INITIAL MEMBER AND ADDRESS | INITIAL CAPITAL CONTRIBUTION | PERCENTAGE OF PROFIT INTEREST | VOTING UNITS |
|---|---|---|---|
| Name: GIMI GROUP[ Address: Email: | 300,000 | 16% | 16 |
| Alex Scolnik Address: Email: | 0 | 84% | 84 |
| **TOTAL** | **300,000** | **100%** | **100** |



## Fwd: CONSOLIDACION DEUDA ALEX

From:  Pablo Barreiro (pablogbarreiro@yahoo.com)

To:    barreiro.florencia@yahoo.com

Date:  Monday, April 20, 2020, 10:22 AM EDT

ja la deudas a corto plazo de Alex !
La letra es de Alex

PABLO BARREIRO
Cell: 305-528-6007



The content of this email is confidential and intended for the recipient specified in
message only. It is strictly forbidden to share any part of this message with any third
party, without a written consent of the sender. If you received this message by mistake,
please reply to this message and follow with its deletion, so that we can ensure such a
mistake does not occur in the future.

Inicio del mensaje reenviado:

> **De:** Nikki-santa fe news <nikki@santafebalharbour.com>
> **Fecha:** 17 de febrero de 2017, 1:03:01 p. m. EST
> **Para:** Pablo G Barreiro <pablogbarreiro@yahoo.com>
> **Asunto: FW: CONSOLIDACION DEUDA ALEX**

PABLO, AQUI TE MANDA ALEX VARIOS DOCUMENTOS. GRACIAS, NIKKI.

**From:** SantaFeNews@aol.com [mailto:SantaFeNews@aol.com]
**Sent:** Wednesday, February 15, 2017 10:34 AM
**To:** nikki@santafebalharbour.com
**Subject:** Fwd: CONSOLIDACION DEUDA ALEX

From: pablogbarreiro@yahoo.com
To: santafenews@aol.com
Sent: 2/14/2017 11:23:48 P.M. Eastern Standard Time
Subj: Fwd: CONSOLIDACION DEUDA ALEX

Me piden esto.

Utiliza la lista del attach. No te apures y hacelo bien y completo. Tomate tu tiempo.

Si pasamos este paso despegamos.

Se necesitan copias de:

- todos los pagares

- extractos de cuentas de cualquier "loan statement" que muestren los pagos de mensualidades hechas.

- de los fondos cuando fueron recibidos en cada prestamo Y para que se utilizaron esos fondos ( evidencia de aplicacion de esos fondos.

Agregar a la lista de deudas:

Fecha que cada prestamo se hizo inicialmente
Suma original de cada prestamo
Terminos de pago ( mensual/anual) en cada prestamo/deuda
Vencimientos de cada prestamo/deuda.
Tasa de interes y cual es la "base" de la tasa ( ejemplo: Tasa fija %, ajustable basado en PRIME + ____,
Colateral / garantes/
Personal financial statement ( verificar contra extractos de cuentas actuales, credit report, tarjetas de credito

Pablo Barreiro

Business Advisor

Cell: 305-528-6007

4/23/2020                                    Yahoo Mail - Fwd: CONSOLIDACION DEUDA ALEX

Inicio del mensaje reenviado:

**De:** Pablo Barreiro <pablogbarreiro@yahoo.com>
**Fecha:** 14 de febrero de 2017, 6:41:13 PM EST
**Para:** Carlos Nat <carlosnat@msn.com>
**Asunto: CONSOLIDACION DEUDA ALEX**
**Responder a:** Pablo Barreiro <pablogbarreiro@yahoo.com>


Pablo Barreiro
FACTORY REALTY
BUSINESS ADVISOR
CELL: 305-528-6007

=



PABLO CONSOLIDACION DEUDA ALEX 2-17-17.pdf
1.7MB

# ALEX SCOLNIK CONSOLIDACION DE DEUDAS

| NOMBRE | MONTO | TIPO | VTO | COMMENTS |
|---|---|---|---|---|
| | | | | |
| Biscayne Bank | 172,000 | Mortgage | | ✝ |
| Biscayne Bank | 337,000 | Mortgage | | ✝ |
| Balances Credit Cards | 150,000 | | 3-10-17 | ✳ |
| Yellowstone | 140,468.00 | P. Note | | ○ |
| Five Towers | 474.43) 73 | P. Note | | ○ |
| RFS | 261.641.50 | P. Note | | ○ |
| Alejandro Galsky | 175,000 | P. Note | Abril 2107 | ✳ |
| Angel Coral Inc | 175,000 | P. Note | Nov-17 | |
| Marcelo Briscese | 300,000 | P. Note | Julio 2017 | ✝ |
| Y/A. | 150,000 | P. Note | Mayo 2017 | ✳ |
| Suh Trust | 50,000 | | 3-10-17 | ✳ |
| PB/SB | 100,000 | P. Note | | |
| WG FINANCE | 144.000.00 | | | ○ |
| TOTAL | 2635.59).20 | | | |

✳ ESTOS SON LOS MAS URGENTES

✝ ESTOS CREO QUE NO HAY QUE REINVIZARLOS

○ ATTACH CONTRACTS

# YELLOWSTONE CAPIT.

30 Broad street 11th Floor, New York, New York, 10004 1601
One Evergreen Place, Suite 205, Teaneck, New Jersey 07666



### SECURED MERCHANT AGREEME

This Agreement, dated October 28, 2016 is between Yellowstone Capital LLC ("YS

Business Legal Name: BRICKELL RESTAURANTE LLC And the

D/B/A BRICKELL RESTAURANTE

Type of Entity (check one): [ ] Corporation [✓] LLC [ ] LP [ ] LLP [ ] Sole Pro

Physical Address: 701 S MIAMI AVENUE # 360B, MIAMI, FL(

Mailing Address: 701 S MIAMI AVENUE # 360B, MIAMI, FLORIDA 33131

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to YSC (making YSC the absolute owner) in consideration of the funds provided pursuant to the "Purchase Price" specified below, the Specified Percentage (defined below) of each of Merchant's future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers and/or other third party payors (the "Receipts" defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business) for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been delivered to YS

The Purchased Amount shall be paid to YSC by Merchant irrevocably authorizing only ONE depositing account acceptable to YSC (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as YSC receives payment in full of the Purchased Amount. Merchant hereby authorizes YSC to ACH debit the specified percentage from the settlement funds and will provide YSC with all required access codes and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by YSC remains in the account and to hold harmless the bank accounts and the YSC resulting from a corrected ACH attempt in the event of default. Due Appendix A. YSC is not responsible for any overdrafts or rejected transactions that may result from YSC's ACH debiting the specified amounts under the terms of this agreement. YSC may, upon 30 days prior written notice, adjust the amount of any payment due under this Agreement if YSC's sole discretion and at its best, appropriate. Notwithstanding anything in the contrary in the Agreement or any other agreement between YSC and Merchant upon the violation of any provision contained in the MERCHANT AGREEMENT, TERMS AND CONDITIONS, or the occurrence of an Event of Default under the MERCHANT AGREEMENT, TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is attached hereto at Appendix A

| PURCHASE PRICE: | SPECIFIED PERCENTAGE: | PURCHASED AMOUNT: |
|---|---|---|
| $ 50,000.00 | 15 % | $ 72,500.00 |

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT SECURITY AGREEMENT" AND "ADMINISTRATIVE FORM" THEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS MERCHANT AGREEMENT

FOR THE MERCHANT #1
By:

Name: ALEJANDRO SCOFNIK
Title: OWNER
SSN:

OWNER/GUARANTOR #1
By:

Name: ALEJANDRO SCOFNIK
SSN:

FOR THE MERCHANT #2
By:

Name:
Title:
SSN:

OWNER/GUARANTOR #2
By:

Name:
SSN:

In the event set forth herein each of the person or obligated upon are hereby in consideration of the Agreement, liable to all terms of the Agreement, including the Additional Terms set forth below. Each of above named Merchant and obligated upon, confirms that he or she authorized to sign this Agreement for Merchant and legally binding said Merchant to pay the obligations and that the information provided herein and in all of YSC documents, form, and sale information, are true, accurate and complete in all respect. If any such information is false or misleading Merchant shall be deemed in material breach of all agreements below in default, and YSC and YSC shall be entitled to all remedies available under law. YSC may produce a monthly statement reflecting the delivery of the specified Percentage of the credits from its Account or set Percent or set I/or Open account to set Account against impacts, as may be under the connection with the Agreement. Merchant, and each of the above against this agreement. YSC is against and represents and are expressly and unconditionally, irrevocably engaged by YSC to guarantee legal, any interest in, or against any other situation, or any balance from an Account Merchant or any of its Owner, for the purpose of the Agreement and ACH pull credit report of any time now or for as long as Merchant and/or Owner(s) continue to have any obligation owed to YSC is in consideration of this Agreement and each liability to determine Merchant, including but also into any future agreement with Company

ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION

From: Cyril F Skonazi    Fax: (888) 357-6254         To:              Fax: +1 (305) 8610939      Page 14 of 20 11/18/2016 5:18 PM


## Umbrella Financing

WWW.UMBRELLAFINANCING.COM

## REVENUE BASED FACTORING AGREEMENT

Agreement dated _____11/16/2016_____  between **PURCHASER** and the merchant listed below ("the **Merchant**")
                    (Month) (Day) (Year)

### MERCHANT INFORMATION

Merchant's Legal Name: AVENTURA TACOS LLC

D/B/A  SANTA FE NEW AND  ESPRESSO                         State of Incorporation / Organization  FL

Type of entity ( ) Coporation ( X) Limited Liability Company ( ) Limited Partnership ( ) Limited Liability Partnership ( ) Sole Proprietor

Physical Address: 19575 BISCAYNE BLVD 3205     City    AVENTURA     Mailing  State  FL          Zip  33154

Address:  9700 COLLINS AVE STE 243          City  BAL HARBOUR                State   FL          Zip  33154

Date business started (mm/yy)                          Federal ID#

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to PURCHASER, as the lead purchaser for itself and other participants (making PURCHASER on behalf of itself and all participants, the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Merchant's future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers and/or other third party payors (collectively the "Receipts" defined as all payments made by cash, check, credit cards, charge cards, debit cards, prepaid cards, mobile payments, electronic transfer or any other form of monetary payment in the ordinary course of the Merchant's business), until such time as the "Receipts Purchased Amount" has been delivered by Merchant to PURCHASER. The Receipts Purchased Amount shall be paid to PURCHASER by the Merchant irrevocably authorizing one or more bank accounts acceptable to PURCHASER (the "Account") to remit the percentage specified below (the "Specified Percentage") of Merchant's Receipts, until such time as PURCHASER receives payment in full of the Receipts Purchased Amount. In consideration of servicing the account, the Merchant hereby authorizes PURCHASER to ACH Debit the "Specific Daily Amount" from Merchant's bank account as the base payment credited against the Specified Percentage due. It is the Merchant's responsibility to provide bank statements for any and all bank accounts held by the Merchant to reconcile the daily payments made against the Specified Percentage permitting PURCHASER to debit or credit the difference to the merchant so that payment equals the Specified Percentage. Failure to provide all of their bank statements in a timely manner or missing a month shall forfeit all rights to future reconciliations. PURCHASER may, upon Merchant's request, adjust the amount of any payment due under this Agreement at PURCHASER's sole discretion and as it deems appropriate in servicing this Agreement. Merchant understands that it is responsible for ensuring that funds adequate to cover amount to be debited by PURCHASER remain in the account. Merchant will be held responsible for any fees incurred by PURCHASER resulting from a rejected ACH attempt or an Event of Default or other breach of this Agreement (See Appendix A). PURCHASER is not responsible for any overdrafts or rejected transactions in the Merchant's account which may result from PURCHASER's scheduled ACH debit under the terms of this agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between PURCHASER and Merchant, upon the violation of any provision of the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall immediately equal 100% A list of all fees applicable under this agreement is contained in Appendix A**

*** Obtaining other financing, secured or unsecured, during the performance of this agreement shall constitute an Event of Default. ***

Purchase Price: $150,000.00 Specified Percentage: 25 % Set Up Fee: $ 2,500.00  Receipts Purchased Amount: $202,500.00  Specified Daily Amount $1,483.52

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS", THE "MERCHANT SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM" EACH OF WHICH IS ATTACHED HERETO, ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT

FOR THE MERCHANT (#1)

By  ALEJANDRO F SCOLNIK
        (Print Name and Title)                                                (Signature)

FOR THE MERCHANT (#2)

By
        (Print Name and Title)                                                (Signature)

GUARANTOR (#1)

By ALEJANDRO F SCOLNIK
        (Print Name and Title)                                                (Signature)

GUARANTOR (#2)

Bank ACH Payment Method   Rev. 5/19/14     Merchant Initials            Page 1 of 4

# YELLOWSTONE CAPITAL LLC

30 Broad Street, 14th floor, Suite 1462, New York, New York 10004
One Evertrust Plaza, Suite 1401, Jersey City, New Jersey 07302

## SECURED MERCHANT AGREEMENT

This Agreement, dated September 19, 2016, is between Yellowstone Capital, LLC ("YSC") and the merchant listed below (the "Merchant"):

Business Legal Name: PIACERE NEWS & CAFE, CORP. (See Ex. A)

D/B/A: PIACERE NEWS & CAFE

Type of Entity (check one): [✓] Corporation [ ] LLC [ ] LP [ ] LLP [ ] Sole Proprietor    EIN # 39-2080226

Physical Address: 9700 COLLINS AVE ST FE NEWS # 243, BAL HARBOUR FL. 33154

Mailing Address: 9700 COLLINS AVE ST FE NEWS # 243, BAL HARBOUR FL. 33154

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to YSC (making YSC the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Merchant's future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts" defined as all payments made by each check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business), for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been delivered by Merchant to YSC.

The Purchased Amount shall be paid to YSC by Merchant's irrevocably authorizing only ONE depositing account acceptable to YSC (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as YSC receives payment in full of the Purchased Amount. Merchant hereby authorizes YSC to ACH Debit the specified remittances from the merchant's bank account on a daily basis and will provide YSC with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by YSC remains in the account and will be held responsible for any fees incurred by YSC resulting from a rejected ACH attempt or an event of default. (See Appendix A). YSC is not responsible for any overdrafts or rejected transactions that may result from YSC's ACH debiting the specified amounts under the terms of this agreement. YSC may, upon Merchant's request, adjust the amount of any payment due under this Agreement at YSC's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between YSC and Merchant, upon the violation of any provision contained the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under the MERCHANT AGREEMENT TERMS AND CONDITIONS the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is annexed hereto in Appendix A.

| PURCHASE PRICE: | SPECIFIED PERCENTAGE: | PURCHASED AMOUNT: |
|---|---|---|
| $ 50,000.00 | 10 % | $ 70,000.00 |

**THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT SECURITY AGREEMENT" AND "ADMINISTRATIVE FORM" HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

FOR THE MERCHANT #1
By: _____

Name: ALEJANDRO SCOLNIK
Title: PRESIDENT
SSN: 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

OWNER/GUARANTOR #1
By: _____

Name: ALEJANDRO SCOLNIK
SSN: 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

FOR THE MERCHANT #2
By: _____

Name:
Title:
SSN:

OWNER/GUARANTOR #2
By: _____

Name:
SSN:

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to pay this obligation and that the information provided herein and in all of YSC documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all Agreements between Merchant and YSC, and YSC shall be entitled to all remedies available under law. YSC may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to YSC. An investigative report may be made in connection with the Agreement. Merchant and each of the above signed Owners, authorizes YSC, its agents and representatives and any credit reporting agency engaged by YSC to: (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/or Owner(s) continue to have any obligation owed to YSC as a consequence of this Agreement, or for YSC's ability to determine Merchant's eligibility to enter into any future agreement with Company.

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.**

# YELLOWSTONE CAPITAL LLC

30 Broad Street, 14th Floor, Suite 1462, New York, New York 10004
One Evertrust Plaza, Suite 1301, Jersey City, New Jersey 07302

## SECURED MERCHANT AGREEMENT

This Agreement, dated September 19, 2016, is between Yellowstone Capital, LLC ("YSC") and the merchant listed below (the "Merchant")

Business Legal Name: SUNNY ISLES BEACH RESTAURANT CORP (See Ex. A)

D/B/A: SUNNY ISLES BEACH RESTAURANT

Type of Entity (check one): [✓] Corporation [ ] LLC [ ] LP [ ] LLP [ ] Sole Proprietor          EIN #: 27-4206022

Physical Address: 9700 COLLINS AVE ST FE NEWS # 243, BAL HARBOUR FL 33154

Mailing Address: 9700 COLLINS AVE ST FE NEWS # 243, BAL HARBOUR FL 33154

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to YSC (making YSC the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, the Specified Percentage (defined below) of Merchant's future payments, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts") defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business), for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been delivered by Merchant to YSC.

The Purchased Amount shall be paid to YSC by Merchant's irrevocably authorizing only ONE depositing account acceptable to YSC (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as YSC receives payment in full of the Purchased Amount. Merchant hereby authorizes YSC to ACH Debit the specified remittances from the merchant's bank account on a daily basis and will provide YSC with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by YSC remains in the account and will be held responsible for any fees incurred by YSC resulting from a rejected ACH attempt or an event of default. (See Appendix A). YSC is not responsible for any overdrafts or rejected transactions that may result from YSC's ACH debiting the specified amounts under the terms of this agreement. YSC may, upon Merchant's request, adjust the amount of any payment due under this Agreement at YSC's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between YSC and Merchant, upon the violation of any provision contained the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is annexed hereto in Appendix A.

| PURCHASE PRICE: | SPECIFIED PERCENTAGE: | PURCHASED AMOUNT: |
|---|---|---|
| $ 50,000.00 | 10 % | $ 70,000.00 |

**THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT SECURITY AGREEMENT" AND "ADMINISTRATIVE FORM" HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

FOR THE MERCHANT #1
By:

Name: ALEJANDRO SCOLNIK
Title: PRESIDENT
SSN: 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

OWNER/GUARANTOR #1
By:

Name: ALEJANDRO SCOLNIK
SSN: 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

FOR THE MERCHANT #2
By:

Name:
Title:
SSN:

OWNER/GUARANTOR #2
By:

Name:
SSN:

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to pay this obligation and that the information provided herein and in all of YSC documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and YSC, and YSC shall be entitled to all remedies available under law. YSC may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to YSC. An investigative report may be made in connection with the Agreement. Merchant and each of the above signed Owners authorizes YSC, its agents and representatives and any credit-reporting agency engaged by YSC, to (i) investigate any references given on any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation owed to YSC as a consequence of this Agreement or for YSC's ability to determine Merchant's eligibility to enter into any future agreement with Company.

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.**

# YELLOWSTONE CAPITAL LLC

30 Broad Street, 14th Floor, Suite 1462, New York, New York 10005
One Evertrust Plaza, Suite 1401, Jersey City, New Jersey 07303

## SECURED MERCHANT AGREEMENT

This Agreement, dated September 19, 2016, is between Yellowstone Capital, LLC ("YSC") and the merchant listed below (the "Merchant").

Business Legal Name: GODIVA AMERICAN, CORP. (See Ex. A)

D/B/A: GODIVA AMERICAN

Type of Entity (check one): [✓] Corporation [ ] LLC [ ] LP [ ] LLP [ ] Sole Proprietor          EIN #: 65-0476533

Physical Address: 9700 COLLINS AVE ST FE NEWS # 243, BAL HARBOUR FL 33154

Mailing Address: 9700 COLLINS AVE ST FE NEWS # 243, BAL HARBOUR FL 33154

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to YSC (making YSC the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, the Specified Percentage of Merchant's future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts") defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business), for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been delivered by Merchant to YSC.

The Purchased Amount shall be paid to YSC by Merchant's irrevocably authorizing only ONE depositing account acceptable to YSC (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as YSC receives payment in full of the Purchased Amount. Merchant hereby authorizes YSC to ACH Debit the specified remittances from the merchant's bank account on a daily basis and will provide YSC with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by YSC remains in the account and will be indistinguishable for any fees incurred by YSC resulting from a rejected ACH attempt or an event of default. (See Appendix A). YSC is not responsible for any overdrafts or rejected transactions that may result from YSC's ACH debiting the specified amounts under the terms of this agreement. YSC may, upon Merchant's request, adjust the amount of any payment due under this Agreement at YSC's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between YSC and Merchant, upon the violation of any provision contained the MERCHANT AGREEMENT TERMS AND CONDITIONS, or the occurrence of an Event of Default under the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is annexed hereto in Appendix A.

| PURCHASE PRICE: | SPECIFIED PERCENTAGE: | PURCHASED AMOUNT: |
|---|---|---|
| $ 75,000.00 | 10 % | $ 105,000.00 |

**THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT SECURITY AGREEMENT" AND "ADMINISTRATIVE FORM" HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

FOR THE MERCHANT #1
By:

Name: ALEJANDRO SCOLNIK
Title: PRESIDENT
SSN: 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

OWNER/GUARANTOR #1
By:

Name: ALEJANDRO SCOLNIK
SSN: 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

FOR THE MERCHANT #2
By:

Name:
Title:
SSN:

OWNER/GUARANTOR #2
By:

Name:
SSN:

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to pay this obligation and that the information provided herein and in all of YSC documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and YSC, and YSC shall be entitled to all remedies available under law. YSC may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to YSC. An investigative report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorizes YSC, its agents and representatives and any credit reporting agency engaged by YSC to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or in the future, for as long as Merchant and/or Owners(s) continue to have any obligation owed to YSC or as a consequence of this Agreement or for YSC's ability to collect the Merchant' obligation or enter into any future agreement with Company.

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.**

4/23/2020                                  Yahoo Mail - Fwd: BRICKELL RESTAUR/



# Fwd: BRICKELL RESTAURANTE LLC PROJECTIONS

From: Pablo Barreiro (pablogbarreiro@yahoo.com)

To:   barreiro.florencia@yahoo.com

Date: Monday, April 20, 2020, 09:59 AM EDT

PABLO BARREIRO
Cell: 305-528-6007



The content of this email is confidential and intended for the recipient specified in
message only. It is strictly forbidden to share any part of this message with any third
party, without a written consent of the sender. If you received this message by mistake,
please reply to this message and follow with its deletion, so that we can ensure such a
mistake does not occur in the future.

Inicio del mensaje reenviado:

> **De:** Nikki-santa fe news <nikki@santafebalharbour.com>
> **Fecha:** 13 de diciembre de 2017, 5:43:18 p. m. EST
> **Para:** Pablo G Barreiro <pablogbarreiro@yahoo.com>
> **Asunto: BRICKELL RESTAURANTE LLC PROJECTIONS**

Hello Pablo:

Revised Brickell Restaurante LLC.

Thank you.

**Nikki Conde**

**Phone 305-866-2450**

**Fax 305-861-0939**

**Santa Fe News & Espresso**

**9700 Collins Avenue**

**Suite #243**

**Bal Harbour, FL 33154**

**nikki@ santafebalharbour.com**

 13 WEEK BRICKELL RESTAURANTE LLC CASH FLOW BUDGET (revised alex).XLSX
14.2kB

## Fwd: BRICKELL RESTAURANTE LLC PROJECTIONS

From: Pablo Barreiro (pablogbarreiro@yahoo.com)

To:   barreiro.florencia@yahoo.com

Date: Monday, April 20, 2020, 09:59 AM EDT

PABLO BARREIRO
Cell: 305-528-6007



The content of this email is confidential and intended for the recipient specified in
message only. It is strictly forbidden to share any part of this message with any third
party, without a written consent of the sender. If you received this message by mistake,
please reply to this message and follow with its deletion, so that we can ensure such a
mistake does not occur in the future.

Inicio del mensaje reenviado:

> **De:** Nikki-santa fe news <nikki@santafebalharbour.com>
> **Fecha:** 13 de diciembre de 2017, 5:43:18 p. m. EST
> **Para:** Pablo G Barreiro <pablogbarreiro@yahoo.com>
> **Asunto: BRICKELL RESTAURANTE LLC PROJECTIONS**

Hello Pablo:

Revised Brickell Restaurante LLC.

Thank you.

## Fwd: PAYROLL 11-13-17 TO 11-19-17

From: Pablo Barreiro (pablogbarreiro@yahoo.com)

To: barreiro.florencia@yahoo.com

Date: Monday, April 20, 2020, 10:01 AM EDT

MÁS PRUEBAS DE MI TRABAJO EN TODOS LOS NEGOCIOS

PABLO BARREIRO
Cell: 305-528-6007



The content of this email is confidential and intended for the recipient specified in
message only. It is strictly forbidden to share any part of this message with any third
party, without a written consent of the sender. If you received this message by mistake,
please reply to this message and follow with its deletion, so that we can ensure such a
mistake does not occur in the future.

Inicio del mensaje reenviado:

> **De:** Nikki-santa fe news <nikki@santafebalharbour.com>
> **Fecha:** 24 de noviembre de 2017, 10:49:34 a. m. EST
> **Para:** Pablo G Barreiro <pablogbarreiro@yahoo.com>
> **Asunto: PAYROLL 11-13-17 TO 11-19-17**

Hello Pablo:

Adjunto el total de petty cash y los dos empleados de Santa Fe Bal Harbour con horas en Brickell.

**Nikki Conde**

**Phone 305-866-2450**

**Fax 305-861-0939**

**Santa Fe News & Espresso**

**9700 Collins Avenue**

**Suite #243**

**Bal Harbour, FL 33154**

**nikki@santafebalharbour.com**



PABLO BARREIRO TIMECARDS & CASH BRICKELL 11-13-17 TO 11-19-17.pdf
410.9kB



PABLO BARREIRO TIMECARDS ROGER & MIGUEL 11-13-17 TO 11-19-17.pdf
66.5kB

## Fwd: SALES AND USE TAX RETURN BRICKELL RESTAURANTE LLC SEPT 2017

From:  Pablo Barreiro (pablogbarreiro@yahoo.com)

To:    barreiro.florencia@yahoo.com

Date:  Monday, April 20, 2020, 10:00 AM EDT

Pedido de autorización de pago

PABLO BARREIRO
Cell: 305-528-6007



The content of this email is confidential and intended for the recipient specified in
message only. It is strictly forbidden to share any part of this message with any third
party, without a written consent of the sender. If you received this message by mistake,
please reply to this message and follow with its deletion, so that we can ensure such a
mistake does not occur in the future.

Inicio del mensaje reenviado:

> **De:** Nikki-santa fe news <nikki@santafebalharbour.com>
> **Fecha:** 5 de diciembre de 2017, 12:23:27 p. m. EST
> **Para:** Pablo G Barreiro <pablogbarreiro@yahoo.com>
> **Asunto: SALES AND USE TAX RETURN BRICKELL RESTAURANTE LLC SEPT 2017**

Hola Pablo:

Aqui le envio otra factura que deberia ser pagada antes que la que le mande anteriormente de Octubre
2017.

Gracias de nuevo.

**Nikki Conde**

**Phone 305-866-2450**

**Fax 305-861-0939**

**Santa Fe News & Espresso**

**9700 Collins Avenue**

**Suite #243**

**Bal Harbour, FL 33154**

**nikki@santafebalharbour.com**

 PABLO BARREIRO SALES AND USE TAX RETURN BRICKELL RESTAURANTE LLC SEPT 2017.pdf
102.1kB

## Fwd: BRICKELL RESTAURANTE LLC- PAYROLL

From: Pablo Barreiro (pablogbarreiro@yahoo.com)

To:    barreiro.florencia@yahoo.com

Date: Monday, April 20, 2020, 09:59 AM EDT

PABLO BARREIRO
Cell: 305-528-6007



The content of this email is confidential and intended for the recipient specified in
message only. It is strictly forbidden to share any part of this message with any third
party, without a written consent of the sender. If you received this message by mistake,
please reply to this message and follow with its deletion, so that we can ensure such a
mistake does not occur in the future.

Inicio del mensaje reenviado:

**De:** Nikki-santa fe news <nikki@santafebalharbour.com>
**Fecha:** 8 de diciembre de 2017, 7:56:37 a. m. EST
**Para:** Pablo G Barreiro <pablogbarreiro@yahoo.com>, Hilen - Santa Fe <hilen@santafebalharbour.com>
**Asunto: RE: BRICKELL RESTAURANTE LLC- PAYROLL**

ok!!!!

**From:** Pablo G Barreiro [mailto:pablogbarreiro@yahoo.com]
**Sent:** Thursday, December 07, 2017 8:05 PM
**To:** Hilen - Santa Fe
**Cc:** Nikki-santa fe news
**Subject:** Re: BRICKELL RESTAURANTE LLC- PAYROLL

Hilen/Nikki

Cuando tengan mañana los cheques listos y me manden el importe total más el petty cash dare la aprobacion final y debo transferir los fondos a la cuenta.

Estaré disponible mañana Viernes hasta la 9am o después de la 1 pm

Gracias


Pablo Barreiro

Business Advisor

Cell: 305-528-6007


El dic. 7, 2017, a la(s) 3:16 p. m., Hilen - Santa Fe <hilen@santafebalharbour.com> escribió:

Ok. Gracias.


**Hilen Caraballo Gonzalez**

**Phone 305-866-2450**

**Fax 305-861-0939**

**Santa Fe News & Espresso**

**9700 Collins Avenue**

**Suite #243**

**Bal Harbour, FL 33154**

**hilen@santafebalharbour.com**


**From:** Pablo G Barreiro [mailto:pablogbarreiro@yahoo.com]
**Sent:** Thursday, December 07, 2017 3:15 PM
**To:** Hilen - Santa Fe
**Subject:** Re: BRICKELL RESTAURANTE LLC- PAYROLL


Hilen

Confírmame cuando tengas todos los cheque hechos a mano.

Volvemos a sumar y pásame nuevamente el monto total y separadamente el de Petty Cash

Gracias

Pablo Barreiro

Business Advisor

Cell: 305-528-6007


El dic. 7, 2017, a la(s) 10:50 a. m., Hilen - Santa Fe <hilen@santafebalharbour.com> escribió:

> Buenos dias Pablo:

> Por favor confirme si todo va a estar listo para manana.

> Gracias.

> **Hilen Caraballo Gonzalez**

> **Phone 305-866-2450**

> **Fax 305-861-0939**

> **Santa Fe News & Espresso**

> **9700 Collins Avenue**

> **Suite #243**

> **Bal Harbour, FL 33154**

> **hilen@santafebalharbour.com**

> **From:** Hilen - Santa Fe [mailto:hilen@santafebalharbour.com]
> **Sent:** Thursday, December 07, 2017 10:04 AM
> **To:** 'Pablo G Barreiro'
> **Cc:** 'Nikki-santa fe news'
> **Subject:** RE: BRICKELL RESTAURANTE LLC- PAYROLL

> Buen dia Pablo:

> La nomina de la semana del 11/27/17 – 12/03/17 en Paychex es $5,324.21.

> Dos semanas de taxes son $4,617.71.

Total Paychex $9,941.92.

Petty Cash $3,298.00.

En total se necesita para la nomina $13,239.92.

Para mas informacion por favor vea los archives adjuntos.

Por favor Alex necesita saber la confirmacion de la nomina.

Gracias.

**Hilen Caraballo Gonzalez**

**Phone 305-866-2450**

**Fax 305-861-0939**

**Santa Fe News & Espresso**

**9700 Collins Avenue**

**Suite #243**

**Bal Harbour, FL 33154**

**hilen@santafebalharbour.com**

**From:** Pablo G Barreiro [mailto:pablogbarreiro@yahoo.com]
**Sent:** Wednesday, December 06, 2017 7:20 PM
**To:** Hilen - Santa Fe
**Cc:** Nikki-santa fe news
**Subject:** Re: BRICKELL RESTAURANTE LLC- PAYROLL

No entiendo cuánto es el total ???

Pablo Barreiro

Business Advisor

Cell: 305-528-6007

El dic. 6, 2017, a la(s) 4:24 p. m., Hilen - Santa Fe
<hilen@santafebalharbour.com> escribió:

> Good afternoon Pablo:
>
> Attached please find the payroll from the week of 11/27/17 –
> 12/03/17 for Brickell Restaurante LLC.
>
> Payroll taxes are for two weeks.
>
> Petty cash needed $3298.00.
>
> Thank you.
>
> **Hilen Caraballo Gonzalez**
>
> **Phone 305-866-2450**
>
> **Fax 305-861-0939**
>
> **Santa Fe News & Espresso**
>
> **9700 Collins Avenue**
>
> **Suite #243**
>
> **Bal Harbour, FL 33154**
>
> **hilen@santafebalharbour.com**

 Virus-free. www.avast.com

> <BRICKELL RESTAURANTE LLC- PAYROLL. PART
> 1.pdf>
>
> <BRICKELL RESTAURANTE LLC- PAYROLL. PART
> 2.pdf>

<BRICKELL RESTAURANTE LLC- PAYROLL. PART 2.pdf>

<BRICKELL RESTAURANTE LLC- PAYROLL. PART 1.pdf>

## Fwd: PROJECTIONS GODIVA WEEK OF 12-11-17 TO 12-17-17

From:  Pablo Barreiro (pablogbarreiro@yahoo.com)

To.     barreiro.florencia@yahoo.com

Date:  Monday, April 20, 2020, 09:58 AM EDT

Trabajo que hacia habitualmente

PABLO BARREIRO
Cell: 305-528-6007



The content of this email is confidential and intended for the recipient specified in
message only. It is strictly forbidden to share any part of this message with any third
party, without a written consent of the sender. If you received this message by mistake,
please reply to this message and follow with its deletion, so that we can ensure such a
mistake does not occur in the future.

Inicio del mensaje reenviado:

> **De:** Nikki-santa fe news <nikki@santafebalharbour.com>
> **Fecha:** 19 de diciembre de 2017, 5:48:51 p. m. EST
> **Para:** Pablo G Barreiro <pablogbarreiro@yahoo.com>
> **Asunto: PROJECTIONS GODIVA WEEK OF 12-11-17 TO 12-17-17**

Projections Godiva week of 12-11-17 to 12-17-17

**Nikki Conde**

**Phone 305-866-2450**

**Fax 305-861-0939**

**Santa Fe News & Espresso**

**Nikki Conde**

**Phone 305-866-2450**

**Fax 305-861-0939**

**Santa Fe News & Espresso**

**9700 Collins Avenue**

**Suite #243**

**Bal Harbour, FL 33154**

**nikki@santafebalharbour.com**

 13 WEEK BRICKELL RESTAURANTE LLC CASH FLOW BUDGET (revised alex).XLSX
14.2kB

**9700 Collins Avenue**

**Suite #243**

**Bal Harbour, FL  33154**

**nikki@ santafebalharbour.com**

 PABLO BARREIRO PROJECTIONS GODIVA WEEK OF 12-11-17 TO 12-17-17.pdf
101.5kB

**PROFIT & LOSS ALEX GROUP**

| | DEC/18 PIACRE | DEC/18 BH | DEC/18 BCC | JAN/18 PIACRE | JAN/18 BH | JAN/18 BCC | FEB/18 PIACRE | FEB/18 BH | FEB/18 BCC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | |
| Discounts | 586.85 | 1,009.70 | 436.10 | 378.40 | 879.90 | 230.00 | 675.60 | 1,156.00 | 578.90 | 5,931.45 |
| Discounts Given | -3,134.80 | -4,106.67 | -5,340.97 | -4,158.36 | -5,063.79 | -4,356.43 | -2,135.95 | -3,568.90 | -2,785.12 | -34,650.19 |
| Sales | 252,690.06 | 376,746.02 | 225,786.04 | 246,388.98 | 344,853.73 | 213,982.81 | 173,545.43 | 267,372.43 | 159,874.65 | 1,406,018.03 |
| **TOTAL INCOME** | 250,142.11 | 373,650.05 | 220,881.17 | 242,608.82 | 340,669.84 | 209,856.38 | 172,085.08 | 264,959.53 | 157,668.43 | 2,332,521.41 |
| **COST OF GOODS SOLD** | | | | | | | | | | |
| Cost of Good | -75,067.65 | -119,075.76 | -68,914.93 | -72,175.88 | -108,332.74 | -68,267.23 | -53,380.77 | -77,897.95 | -49,239.72 | -692,352.63 |
| Supplies & Materials | -980.75 | -1,100.54 | -750.34 | -1,232.90 | -1,548.73 | -678.90 | -560.45 | -870.10 | -453.60 | -8,176.31 |
| **GROSS PROFIT** | 174,093.71 | 253,473.75 | 151,215.90 | 169,200.04 | 230,788.37 | 140,910.25 | 118,143.86 | 186,191.48 | 107,975.11 | 1,531,992.47 |
| **EXPENSES** | | | | | | | | | | |
| Bank Charges | 360.00 | 280.00 | 150.00 | 80.00 | 140.00 | 200.00 | 180.00 | 110.00 | 90.00 | 1,590.00 |
| Comissions & Fees | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 22,500.00 |
| Freight & Delivery | 350.00 | 80.00 | 160.00 | 65.00 | 240.00 | 300.00 | 105.00 | 0.00 | 50.00 | 1,350.00 |
| Insurance | | | | | | | | | | |
| **PAYROLL** | | | | | | | | | | |
| Legal & Professional Fees | 56,857.74 | 97,501.65 | 59,012.19 | 55,205.67 | 98,400.28 | 59,318.62 | 62,707.05 | 108,601.66 | 63,231.69 | 660,836.55 |
| Office Expenses | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 12,150.00 |
| Other General and Admin Expenses | 333.00 | 333.00 | 333.00 | 457.00 | 457.00 | 457.00 | 208.00 | 208.00 | 208.00 | 2,994.00 |
| Purchases | 345.00 | 458.70 | 206.34 | 136.70 | 405.80 | 130.00 | 389.00 | 403.50 | 290.10 | 2,765.14 |
| Rent or Lease | 56,000.00 | 57,000.00 | 22,578.00 | 56,000.00 | 57,000.00 | 21,398.00 | 56,000.00 | 57,000.00 | 15,767.00 | 398,743.00 |
| Repair & Maintenance | 600.00 | 800.00 | 400.00 | 300.00 | 350.00 | 0.00 | 450.00 | 180.00 | 300.00 | 3,380.00 |
| Shipping and delivery expense | | | | | | | | | | |
| SBA Loan | | | 10,450.00 | | | 10,450.00 | | 10,450.00 | 10,450.00 | 31,350.00 |
| Supplies | 560.00 | 750.00 | 345.00 | 1,354.00 | 2,130.00 | 980.00 | 365.00 | 420.00 | 180.00 | 7,084.00 |
| Taxes & Licenses | 580.00 | 580.00 | 580.00 | 580.00 | 580.00 | 580.00 | 580.00 | 580.00 | 580.00 | 5,220.00 |
| Credit Card Fee | 1,971.00 | 2,897.18 | 1,699.26 | 1,995.74 | 2,586.64 | 1,583.35 | 1,358.86 | 199.46 | 1,173.47 | 15,464.96 |
| Uncategorized Expenses | | | | | | | | | | |
| **TOTAL EXPENSES** | 121,806.74 | 164,530.53 | 99,763.79 | 120,024.11 | 166,139.72 | 99,246.97 | 126,192.91 | 171,552.62 | 96,170.26 | 1,165,427.65 |
| **NET OPERATING INCOME** | 53,766.07 | 88,943.72 | 51,452.11 | 49,175.93 | 64,648.65 | 41,663.28 - | 8,049.05 | 14,638.86 | 11,804.85 | 366,564.82 |
| **OTHER EXPENSES** | | | | | | | | | | |
| Net Other Income | | | | | | | | | | |
| **NET INCOME** | | | | | | | | | | |

# GODIVA AMERICAN CORP
## Profit and Loss
### All Dates
### JANUARY TO DECEMBER 2017

|  | Total |
|---|---|
| **Income** |  |
| Discounts | 0.00 |
| Discounts given | 0.00 |
| Sales | 2,735,383.30 |
| Sales of Product Income | 0.00 |
| Uncategorized Income | 0.00 |
| **Total Income** | $ 2,735,383.30 |
| **Cost of Goods Sold** |  |
| Cost of Goods Sold | 765,907.32 |
| Inventory Shrinkage | 0.00 |
| Supplies & Materials - COGS | 13,500.00 |
| **Total Cost of Goods Sold** | $ 779,407.32 |
| **Gross Profit** | $ 1,955,975.98 |
| **Expenses** |  |
| Bank Charges | 1,568.24 |
|  | 14,509.00 |
| Freight & Delivery | 22,345.89 |
| Insurance | 33,981.00 |
| Payroll | 683,845.75 |
| Legal & Professional Fees | 18,650.00 |
| Office Expenses | 1,907.96 |
| Other General and Admin Expenses | 1,347.32 |
| Purchases | 3,450.00 |
| Rent or Lease | 694,080.00 |
| Repair & Maintenance | 9,735.00 |
| Shipping and delivery expense | 0.00 |
| Subcontractors | 0.00 |
| Supplies | 7,890.50 |
| Taxes & Licenses | 66,660.29 |
| Credit Card Fee | 90,408.00 |
| Travel Meals | 0.00 |
| Uncategorized Expense | 0.00 |
| Utilities | 11,370.50 |
| **Total Expenses** | $ 1,661,749.44 |
| **Net Operating Income** | 294,226.54 |
| **Other Expenses** |  |
| FIVE TOWERS | 0.00 |
| FIVE TOWERS | 703,682.44 |
| **Net Other Income** | 703,682.44 |
| **Net Income** | (409,455.90) |

# BRICKELL RESTAURANTE LLC

## Profit and Loss

All Dates

JANUARY TO DECEMBER 2017

| | Total |
|---|---|
| **Income** | |
| Discounts | |
| Discounts given | -1,876.00 |
| Sales | |
| Sales | 1,930,049.10 |
| Sales of Product Income | 0.00 |
| Uncategorized Income | 0.00 |
| **Total Income** | **$ 1,928,173.10** |
| **Cost of Goods Sold** | |
| Cost of Goods Sold | 489,755.98 |
| Inventory Shrinkage | 0.00 |
| Supplies & Materials - COGS | 13,500.00 |
| **Total Cost of Goods Sold** | **$ 503,255.98** |
| **Gross Profit** | **$ 1,424,917.12** |
| **Expenses** | |
| Bank Charges | 389.00 |
| Commissions & fees | 6,500.00 |
| Freight & Delivery | 13,900.00 |
| Insurance | 36,700.00 |
| Payroll | 551,457.48 |
| Legal & Professional Fees | 5,000.00 |
| Office Expenses | 1,800.00 |
| Other General and Admin Expenses | 300.00 |
| Purchases | 3,450.00 |
| Rent or Lease | 192,817.31 |
| Repair & Maintenance | 8,700.00 |
| Shipping and delivery expense | 0.00 |
| Subcontractors | 0.00 |
| Supplies | 18,900.00 |
| Taxes & Licenses | 11,750.00 |
| Credit Card Fee | 12,575.00 |
| Travel Meals | 0.00 |
| Uncategorized Expense | 0.00 |
| Utilities | 26,700.80 |
| **Total Expenses** | **$ 890,939.59** |
| **Net Operating Income** | **533,977.53** |
| **Other Expenses** | |
| FIVE TOWERS | 0.00 |
| **FIVE TOWERS** | **703,682.44** |
| **Net Other Income** | **703,682.44** |
| **Net Income** | **(169,704.91)** |

## ANALYSIS FIVE TOWERS II

| P | PAYOUT | PAYBACK | PAID | DIF | | $ RECEIVED | | # |
|---|---|---|---|---|---|---|---|---|
| 07-07-16 | 195.000,00 | 270.000,00 | 113.685,60 | 156.314,40 | | | | 1 |
| 22-07-16 | 122.500,00 | 168.750,00 | 88.210,98 | 80.539,02 | | | | 2 |
| 23-09-16 | 49.000,00 | 70.000,00 | 17.499,75 | 52.500,25 | | | | 3 |
| 13-10-16 | 49.000,00 | 70.000,00 | 8.400,00 | 61.600,00 | | | | 4 |
| | 415.500,00 | 578.750,00 | 227.796,33 | 350.953,67 | | 415.500,00 | | |
| 01-11-16 | 54.046,33 | 350.953,67 | | | 40 | 54.063,33 | ROLLOVER | 5 |
| | | 75.660,66 | | | | | | |
| 05-12-16 | 50.000,00 | 426.614,33 | 316.179,35 | 110.434,98 | | 50.000,00 | | 6 |
| 15-12-16 | 50.000,00 | 71.400,00 | 32.130,00 | 39.270,00 | | 50.000,00 | | 7 |
| 03-02-17 | 20.000,00 | 71.400,00 | 27.132,00 | 44.268,00 | | 50.000,00 | | 8 |
| 19-02-17 | 16.500,00 | 21.000,00 | | 21.000,00 | | 20.000,00 | | 9 |
| 10-02-17 | 39.068,94 | 17.500,00 | | 17.500,00 | | 16.500,00 | | 10 |
| | | 54.696,52 | 54.696,52 | 54.696,52 | | 30.068,94 | | |
| 28-02-17 | 175.568,94 | 662.610,85 | 375.441,35 | 287.169,50 | | | ROLLOVER | 11 |
| | | | | 287.169,50 | | | | |
| 28-02-17 | 555.444,83 | 788.731,66 | | 788.731,66 | 42 | | ROLLOVER | |
| | | 1.075.901,16 | 636.996,70 | 438.904,46 | | | | |
| 28-04-17 | 495.000,00 | 710.000,00 | 220.000,00 | 490.000,00 | 42 | | | 12 |
| | 1.050.444,83 | 1.785.901,16 | 856.996,70 | 928.904,46 | | | | |
| 17-07-17 | 726.996,70 | 928.904,46 | | 928.904,46 | 25 | | ROLLOVER | 13 |
| | | 908.745,87 | | 908.745,87 | | | | |
| | | 1.837.650,33 | 651.142,33 | 1.186.508,00 | | | | |
| 10/17.17 | 426.749,00 | 1.186.508,00 | | 1.186.508,00 | 25 | | ROLLOVER | 14 |
| | | 533.436,25 | | 533.436,25 | | | | |
| | | 1.719.944,25 | 1.269.891,74 | 450.052,51 | | | | |
| | | 3.381.268,45 | | | | | | |
| | 2.849.305,80 | 3.568.520,60 | | | | | | |
| | | 3.568.520,60 | 187.252,15 | | | | PAID STATEMENT FT | |
| | 2.204.190,53 | 187.252,15 | 187.252,15 | 187.252,15 | | | | |
| 8 meses ? | | | 262.800,36 | 262.800,36 | | | | |

| # | Date | PAYOUT | CONTRACT | PAID | ROLLOVER | ROLL+42% | CONTRACT II | DIF ROLLOVER | PAID FROM FT | DIFERENCE |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 07-07-16 | 195.000,00 | 270.000,00 | 113.685,60 | 113.685,60 | | | | | |
| 2 | 22-07-16 | 122.500,00 | 168.750,00 | 88.210,98 | 88.210,98 | | | | | |
| 3 | 23-09-16 | 49.000,00 | 70.000,00 | 17.499,75 | 17.499,75 | | | | | |
| 4 | 13-10-16 | 49.000,00 | 70.000,00 | 8.400,00 | 8.400,00 | | | | | |
| | | 415.500,00 | 578.750,00 | 578.750,00 | 350.953,67 | 498.354,21 | 578.750,00 | 147.400,54 | 415.500,00 | 187.703,67 |
| 5 | 01-11-16 | 410.000,00 | 574.000,00 | 543.975,68 | 118.619,97 | 257.820,65 | 434.799,92 | 139.200,68 | 469.546,33 | 74.429,35 |
| 6 | 05-12-16 | 50.000,00 | 71.400,00 | 32.310,00 | | | | | | |
| 7 | 15-12-16 | 50.000,00 | 71.400,00 | 27.132,00 | | | | | | |
| 8 | 03-02-17 | 20.000,00 | 21.000,00 | | | | | | | |
| 9 | 19-02-17 | 16.500,00 | 17.500,00 | | | | | | | |
| 10 | 10-02-17 | 39.068,94 | 54.692,52 | | | | | | | |
| | | 175.568,94 | 235.992,52 | 59.442,00 | 176.550,52 | 250.701,74 | | 0 | 175.568,94 | |
| 11 | 22-02-17 | 1.000.000,00 | 1.420.000,00 | 636.596,70 | 396.582,65 | 783.003,30 | 1.091.138,61 | 386.420,65 | - | |
| | | 555.444,83 | | 696.438,70 | | | | | 555.444,83 | 140.993,87 |
| 12 | 28-04-17 | 500.000,00 | 710.000,00 | 220.000,00 | 490.000,00 | | 504.000,00 | 0 | 495.000,00 | |
| 13 | 17-07-17 | 2.000.000,00 | 2.500.000,00 | 651.142,33 | 1.848.857,67 | | 2.170.041,78 | 1.197.715,34 | 726.996,70 | |
| | | | | 871.142,33 | | | | | 1.221.996,70 | 350.854,37 |
| 14 | 17-10-17 | 2.300.000,00 | 2.875.000,00 | 1.269.891,74 | 1.269.891,74 | | 2.354.582,45 | 1.605.108,26 | | |
| | | | | | | | | 651.142,33 | | |
| | | | | | | | | 1.269.891,74 | 426.749,00 - | 843.142,74 |

CASH RECEIVED
2.018.745,25
318.145,73
2.336.890,98

PAID
3.440.890,12
127.630,08
3.568.520,20
1.567.581,03

42%
52%
42%

3.318.385,19
250.135,01

**CASH FROM FIVE TOWERS STATEMENT**

| DATE | CASH ADVANCE BANK ACC | REFUND | RENT PAYMENT | |
|---|---|---|---|---|
| 28-02-17 | 570.000,00 | | | |
| PAGE 1 20-03-17 | 53.817,99 | 15.480,95 | | |
| PAGE 2 31-03-17 | 71.753,32 | 23.081,92 | | |
| PAGE 3 13-04-17 | 35.878,66 | 47.763,20 | | |
| PAGE 4 21-04-17 | 71.755,32 | 42.699,46 | | |
| PAGE 5 | 57.405,85 | 24.760,98 | | |
| | 35.878,66 | | | 2 TIMES SAME IMPORT RECEIVED |
| 28-04-17 | 50.230,17 | | | NO APPEAR IN THE STATEMENT |
| PAGE 6 23-05-17 | 35.878,66 | | | REFUND ? |
| PAGE 7 | | | | |
| 26-05-17 | 35.878,66 | | | REFUND ? NO APPEAR IN THE STATEMENT |
| 30-05-17 | | 3.962,36 | | NO APPEAR IN THE STAMENT |
| 02-06-17 | 35.878,66 | | | REFUND ? NO APPEAR IN THE STATEMENT |
| PAGE 8 | | | | |
| 09-06-17 | 35.878,66 | | | REFUND ? NO APPEAR IN THE STATEMENT |
| 16-06-17 | 35.878,66 | | | REFUND ? NO APPEAR IN THE STATEMENT |
| PAGE 9 | | | | |
| 23-06-17 | 35.878,66 | | | REFUND ? NO APPEAR IN THE STATEMENT |
| 30-06-17 | 35.876,66 | | | REFUND ? NO APPEAR IN THE STATEMENT |
| 03-07-17 | | 144,54 | | NO APPEAR IN THE STAMENT |
| PAGE 10 | | | | |
| 07-07-17 | 35.876,66 | | | REFUND ? NO APPEAR IN THE STATEMENT |
| 14-07-17 | 50.000,00 | | | |
| 14-07-17 | | | | ROLLOVER $1,323,003.30 |
| 20-07-17 | 50.000,00 | | | |
| PAGE 11 | | | | |
| 24-07-17 | | 216,84 | | NO APPEAR IN THE STAMENT |
| | 100.000,00 | 6.084,87 | | |
| PAGE 12 07-08-17 | 70.000,00 | 11.024,62 | | NO APPEAR IN THE STAMENT |
| PAGE 13 | | | | |
| 31-08-17 | | | 56.669,03 | PAID DIRECTLY MALL |
| | 35.000,00 | | | |
| | 25.000,00 | | | NOT RECEIVED |
| PAGE 14 06-09-17 | 135.000,00 | 1.047,68 | | NO APPEAR IN THE STAMENT |
| PAGE 15 04-10-17 | 100.000,00 | | | |
| PAGE 16 | 50.000,00 | | | |
| 12-10-17 | | | 55.327,70 | RENT MALL |
| 17-10-17 | | | | ROOLLOVER    $1.899.457,67 |
| PAGE 17 | | | | |
| | 95.000,00 | | | |
| 20-10-17 | | | 38.615,05 | RENT MALL |

|  |  |  | 59.611,00 | RENT MALL |
|---|---|---|---|---|
|  |  |  | 26.858,53 | COMPLETE RENT MALL ? |

PAGE 18
01-11-17                          30.776,66   RENT MALL ?

PAGE 19
24-11-17    75.000,00              50.287,76   RENT MALL ?

| RECEIVED | 2.018.745,25 |  | 318.145,73 | 2.513.158,40 |  |
|---|---|---|---|---|---|
| PAID |  |  |  | 3.568.520,50 |  |
| NET |  |  |  | 1.055.362,10 | 52,70% |

**CONSOLIDATED**

| | PAYOUT | PAYBACK | PAID | BALANCE/PAY | BALANCE/POUT |
|---|---|---|---|---|---|
| 1 | 195.000,00 | 270.000,00 | 113.685,60 | | |
| 2 | 122.500,00 | 168.750,00 | 88.210,98 | | |
| 3 | 49.000,00 | 70.000,00 | 17.499,75 | | |
| 4 | 49.000,00 | 70.000,00 | 8.400,00 | | |
| | 415.500,00 | 578.750,00 | 227.796,33 | 187.703,67 | 350.953,67 |
| | | | | | 5.000,00 |
| 5 | 410.000,00 | 574.000,00 | 316.179,35 | | 355.953,67 |
| - | 187.703,67 | | | | |
| | 222.296,33 | | | | |
| | 54.046,33 | | | | |
| 6 | 50.000,00 | 71.400,00 | 32.130,00 | | |
| 7 | 50.000,00 | 71.400,00 | 27.132,00 | | |
| 8 | 20.000,00 | 21.000,00 | | | |
| 9 | 16.500,00 | 17.500,00 | | | |
| 10 | 39.068,94 | 54.696,52 | | | |
| | 229.615,27 | 809.996,52 | 375.441,35 | -145.826,08 | 434.555,17 |
| | | | | | 10.000,00 |
| 11 | 1.000.000,00 | 1.420.000,00 | | | 444.555,17 |
| - | 444.555,17 | | | | |
| | 555.444,83 | | 636.996,70 | -81.551,87 | 783.003,30 |
| 12 | 500.000,00 | 710.000,00 | 220.000,00 | 280.000,00 | 490.000,00 |
| 13 | 2.000.000,00 | 2.500.000,00 | | | |
| - | 783.003,10 | | | | |
| - | 490.000,00 | | | | |
| | 726.996,90 | | 651.142,33 | 75.854,57 | 1.848.857,67 |
| 14 | 2.300.000,00 | 2.875.000,00 | | | |
| - | 1.848.857,67 - | 30.491,66 | | | |
| - | 24.393,33 | | | | |
| | 426.749,00 | 2.844.508,34 | 1.269.891,74 | -843.142,74 | 1.574.616,60 |
| | | | | -526.962,45 | |

| DATE | PAY FROM FT | FEE 42% | ADITIONAL FEE | PAID FROM AS | BALANCE |
|---|---|---|---|---|---|
| 07-07-16 | 195.000,00 | 81.900,00 | 5.000,00 | 113.685,60 | 168.214,40 |
| 22-07-16 | 122.500,00 | 51.450,00 | 2.500,00 | 88.210,98 | 256.453,42 |
| 23-09-16 | 49.000,00 | 20.580,00 | 1.000,00 | 17.499,75 | 309.533,67 |
| 13-10-16 | 49.000,00 | 20.580,00 | 1.000,00 | 8.400,00 | 371.713,67 |
| | | - | | | - |
| 01-11-16 | 54.046,33 | 22.699,46 | 5.000,00 | 316.179,35 | 137.280,11 |
| | | - | | | - |
| 05-12-16 | 50.000,00 | 21.000,00 | 1.000,00 | 32.130,00 | 177.150,11 |
| | | - | | | - |
| 15-12-16 | 50.000,00 | 21.000,00 | 1.000,00 | 27.132,00 | 222.018,11 |
| | | - | | | |
| 03-02-17 | 20.000,00 | - | 1.000,00 | | 243.018,11 |
| | | - | | | - |
| 09-02-17 | 16.500,00 | - | 1.000,00 | | 260.518,11 |
| | | - | | | - |
| 02/1017 | 39.068,94 | 16.408,95 | | | 315.996,00 |
| | | - | | | - |
| 28-02-17 | 555.444,83 | 233.286,83 | 10.000,00 | 636.996,70 | 477.730,96 |
| | | - | | | - |
| 28-04-17 | 495.000,00 | 207.900,00 | 5.000,00 | 220.000,00 | 965.630,96 |
| | | - | | | - |
| 14-07-17 | 726.996,70 | 305.338,61 | | 651.142,33 | 1.346.823,95 |
| | | - | | | - |
| 17-10-17 | 426.749,00 | 179.234,58 | | 1.269.891,74 | 682.915,79 |
| | | - | | | - |
| | | | | 183.286,28 | |
| | 2.849.305,80 | | 33.500,00 | 3.564.554,73 | |

## Fwd: CONFERENCE CALL FIVE TOWER AND GODIVA

From: Pablo Barreiro (pablogbarreiro@yahoo.com)

To: barreiro.florencia@yahoo.com

Date: Monday, April 20, 2020, 09:56 AM EDT

PABLO BARREIRO
Cell: 305-528-6007



The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

Inicio del mensaje reenviado:

**De:** Nikki-santa fe news <nikki@santafebalharbour.com>
**Fecha:** 6 de marzo de 2018, 6:38:29 p. m. EST
**Para:** Frederick Neustein <fn@neusteinlaw.com>
**Cc:** Alex Scolnik <santafenews@aol.com>, Pablo G Barreiro <pablogbarreiro@yahoo.com>
**Asunto: CONFERENCE CALL FIVE TOWER AND GODIVA**

Hello Rick:

Godiva: Alex Scolnik, Pablo Barreiro and Nikki Conde

Five Tower: A. J. Meury, Nikolaus Benigni

We spoke about the differences that we had, they were not able to tell us that the differences were correct or not. Therefore, we could not determine if the open balance was

toward Five Tower or Godiva. We are going to stand by and wait until Five Tower reviews his statement and go over their files in order to have an accurate answer. They were not

able to answer the most simples questions about our account, and how they handle certain issues.

It needs to be mentioned that we have been dealing with Five Tower for about 20 months. If, hypothetically, we would in average received $80,000.00 per month (just as an example), we would have

$1,600,000.00 plus 20% of charges and fees we would have a balance of nearly $2,200,000.00. So far we have paid over $2,900,000.00 against the debt, There has to be a mistake somewhere

that needs to be clarified as soon as possible.

We are hoping to have a new statement that we asked for going back to day one (June 2016) with monthly details of all withdrawals and deposits as well as any payments made directly to a third party, as

well as someone who can answer any questions about the huge differences.

Any questions, please call us.

Regards,

**Nikki Conde**

**Phone 305-866-2450**

**Fax 305-861-0939**

**Santa Fe News & Espresso**

**9700 Collins Avenue**

**Suite #243**

**Bal Harbour, FL 33154**

**nikki@santafebalharbour.com**

## Fwd: ANALYSIS FIVE TOWERS II.xlsx

From: Pablo Barreiro (pablogbarreiro@yahoo.com)

To: barreiro.florencia@yahoo.com

Date: Monday, April 20, 2020, 09:49 AM EDT

PABLO BARREIRO
Cell: 305-528-6007



The content of this email is confidential and intended for the recipient specified in
message only. It is strictly forbidden to share any part of this message with any third
party, without a written consent of the sender. If you received this message by mistake,
please reply to this message and follow with its deletion, so that we can ensure such a
mistake does not occur in the future.

Inicio del mensaje reenviado:

> **De:** Pablo Barreiro <pablogbarreiro@yahoo.com>
> **Fecha:** 15 de abril de 2018, 12:25:17 p. m. EDT
> **Para:** "nikki@santafebalharbour.com" <nikki@santafebalharbour.com>
> **Cc:** Alex Scolnik <santafenews@aol.com>
> **Asunto: ANALYSIS FIVE TOWERS II.xlsx**
>
> TERMINADO.
> VER HOJA 1 Y HOJA 2 EN EL MISMO ARCHIVO
> Nikki por favor imprimi manana 3 copias para mi
> Gracias
>
> Pablo Barreiro
> Business Advisor
> Cell: 305-528-6007

 ANALYSIS FIVE TOWERS II.xlsx
15.5kB

## Fwd: FIVE TOWERS MEETING

From:  Pablo Barreiro (pablogbarreiro@yahoo.com)

To:    barreiro.florencia@yahoo.com

Date:  Monday, April 20, 2020, 09:51 AM EDT

Acá le notifico al Abogado de Alex y a Nikki de la reunión final por la Auditoría con los empleados de Five Tower

PABLO BARREIRO
Cell: 305-528-6007



The content of this email is confidential and intended for the recipient specified in
message only. It is strictly forbidden to share any part of this message with any third
party, without a written consent of the sender. If you received this message by mistake,
please reply to this message and follow with its deletion, so that we can ensure such a
mistake does not occur in the future.

Inicio del mensaje reenviado:

**De:** Pablo Barreiro <pablogbarreiro@yahoo.com>
**Fecha:** 12 de marzo de 2018, 5:46:33 p. m. EDT
**Para:** Frederick Neustein <fn@neusteinlaw.com>
**Cc:** "nikki@santafebalharbour.com" <nikki@santafebalharbour.com>, Alex Scolnik
<santafenews@aol.com>
**Asunto: FIVE TOWERS MEETING**

Hi Rick
Five Towers called us and said that they finished the review and tomorrow at 2pm two employees of five
Towers will come to our office in Bal Harbor whit a new Statement for to explain and check everything whit
us.
All in a very friendly way.
After the meeting we will send you all the information received and our comments for that you continues
whit the negotiation.
Regards

Pablo Barreiro
Business Advisor

Cell: 305-528-6007

**AUDITORY HMF GROUP**

| DATE FUNDED | DBA | OF TIMES FUNDED | ADVANCE | PAYBACK | WIRE OUT | PAID IN | BALANCE |
|---|---|---|---|---|---|---|---|
| 23/2/2017 | PIACERE NEWS & CAFE CORP. | 1 COM | $51.000,00 | $73.950,00 | $50.218,38 | $56.000,00 | $0,00 |
| 3/3/2017 | PIACERE NEWS & CAFE CORP. | 2 COM | $22.000,00 | $30.800,00 | $0,00 | $30.800,00 | $0,00 |
| 15/3/2017 | PIACERE NEWS & CAFE CORP. | 3 COM | $5.000,00 | $5.500,00 | $5.000,00 | $5.500,00 | $0,00 |
| 5/4/2017 | PIACERE NEWS & CAFE CORP. | 4 COM | $15.000,00 | $16.500,00 | $14.850,00 | $16.500,00 | $0,00 |
| 13/4/2017 | PIACERE NEWS & CAFE CORP. | 5 COM | $15.000,00 | $16.500,00 | $14.850,00 | $16.500,00 | $0,00 |
| 19/4/2017 | PIACERE NEWS & CAFE CORP. | 6 COM | $15.000,00 | $16.500,00 | $14.850,00 | $16.500,00 | $0,00 |
| 26/4/2017 | PIACERE NEWS & CAFE CORP. | 7 COM | $10.000,00 | $11.000,00 | $9.900,00 | $11.000,00 | $0,00 |
| 1/5/2017 | PIACERE NEWS & CAFE CORP. | 8 COM | $20.000,00 | $22.000,00 | $19.800,00 | $22.000,00 | $0,00 |
| 2/5/2017 | PIACERE NEWS & CAFE CORP. | 9 COM | $30.000,00 | $33.000,00 | $29.700,00 | $33.000,00 | $0,00 |
| 8/5/2017 | PIACERE NEWS & CAFE CORP. | 10 COM | $11.000,00 | $12.100,00 | $10.890,00 | $12.100,00 | $0,00 |
| 17/5/2017 | PIACERE NEWS & CAFE CORP. | 11 COM | $30.000,00 | $43.500,00 | $29.100,00 | $36.600,00 | $0,00 |
| 7/6/2017 | PIACERE NEWS & CAFE CORP. | 12 COM | $22.000,00 | $30.800,00 | $21.000,00 | $30.800,00 | $0,00 |
| 14/6/2017 | PIACERE NEWS & CAFE CORP. | 13 COM | $20.000,00 | $25.000,00 | $19.100,00 | $25.000,00 | $0,00 |
| 20/6/2017 | PIACERE NEWS & CAFE CORP. | 14 COM | $30.000,00 | $37.500,00 | $29.100,00 | $37.500,00 | $0,00 |
| 28/6/2017 | PIACERE NEWS & CAFE CORP. | 15 COM | $30.000,00 | $34.500,00 | $29.100,00 | $34.500,00 | $0,00 |
| 10/7/2017 | PIACERE NEWS & CAFE CORP. | 16 COM | $52.500,00 | $65.625,00 | $38.425,00 | $65.625,00 | $0,00 |
| 19/7/2017 | PIACERE NEWS & CAFE CORP. | 17 COM | $40.000,00 | $50.000,00 | $38.800,00 | $50.500,00 | $0,00 |
| 20/7/2017 | PIACERE NEWS & CAFE CORP. | 18 COM | $10.000,00 | $11.000,00 | $10.000,00 | $11.000,00 | $0,00 |
| 26/7/2017 | PIACERE NEWS & CAFE CORP. | 19 COM | $20.000,00 | $22.000,00 | $20.000,00 | $22.000,00 | $0,00 |
| 4/8/2017 | PIACERE NEWS & CAFE CORP. | 20 COM | $27.000,00 | $36.000,00 | $24.500,00 | $37.000,00 | $0,00 |
| 8/8/2017 | PIACERE NEWS & CAFE CORP. | 21 COM | $90.000,00 | $112.500,00 | $50.075,00 | $112.500,00 | $0,00 |
| 15/8/2017 | PIACERE NEWS & CAFE CORP. | 22 COM | $10.000,00 | $14.000,00 | $10.000,00 | $14.500,00 | $0,00 |
| 17/8/2017 | PIACERE NEWS & CAFE CORP. | 23 COM | $24.900,00 | $34.860,00 | $14.000,00 | $34.860,00 | $0,00 |
| 31/8/2017 | PIACERE NEWS & CAFE CORP. | 24 COM | $30.000,00 | $37.500,00 | $0,00 | $37.500,00 | $0,00 |
| 19/9/2017 | PIACERE NEWS & CAFE CORP. | 25 ACTIVE | $90.000,00 | $112.500,00 | $56.950,00 | $107.000,00 | $0,00 * |
| 29/9/2017 | PIACERE NEWS & CAFE CORP. | 26 ACTIVE | $25.000,00 | $35.000,00 | $24.250,00 | $28.000,00 | $0,00 * |
| 29/9/2017 | PIACERE NEWS & CAFE CORP. | 27 ACTIVE | $38.235,00 | $49.705,50 | $0,00 | $38.000,00 | $0,00 * |
| 7/11/2017 | PIACERE NEWS & CAFE CORP. | 28 ACTIVE | $133.600,00 | $225.784,00 | $0,00 | $100.500,00 | $125.284,00 |
| *THESE DEALS WERE PAID OFF BY THE DEAL DATED 11/7/2017 | | | | | | | |
| 8/11/2017 | $1.000,00 | | | | $584.458,38 | $1.043.285,00 | -$458.826,62 |
| 9/11/2017 | $1.000,00 | | | | | | |
| 14/11/2017 | $1.000,00 | | | | | | |
| 14/11/2017 | $1.000,00 | | | | | | |
| 15/11/2017 | $1.000,00 | | | | | | |
| 16/11/2017 | $1.000,00 | | | | | | |
| 17/11/2017 | $1.000,00 | | | | | | |
| 20/11/2017 | $1.000,00 | | | | | | |
| 21/11/2017 | $1.000,00 | | | | | | |
| 22/11/2017 | $1.000,00 | | | | | | |
| 24/11/2017 | $1.000,00 | | | | | | |
| 27/11/2017 | $1.000,00 | | | | | | |
| 28/11/2017 | $1.000,00 | | | | | | |
| 29/11/2017 | $1.000,00 | | | | | | |
| 30/11/2017 | $1.000,00 | | | | | | |
| 4/12/2017 | $500,00 | | | | | | |
| 4/12/2017 | $1.500,00 | | | | | | |
| 5/12/2017 | $1.000,00 | | | | | | |
| 6/12/2017 | $1.000,00 | | | | | | |
| 7/12/2017 | $1.000,00 | | | | | | |
| 8/12/2017 | $1.000,00 | | | | | | |
| 11/12/2017 | $2.000,00 | | | | | | |
| 12/12/2017 | $1.000,00 | | | | | | |
| 13/12/2017 | $1.000,00 | | | | | | |
| 15/12/2017 | $1.000,00 | | | | | | |
| 18/12/2017 | $1.000,00 | | | | | | |
| 20/12/2017 | $1.000,00 | | | | | | |
| 22/12/2017 | $2.000,00 | | | | | | |
| 26/12/2017 | $500,00 | | | | | | |
| 27/12/2017 | $2.000,00 | | | | | | |
| 28/12/2017 | $1.500,00 | | | | | | |
| 29/12/2017 | $1.000,00 | | | | | | |
| 3/1/2018 | $1.000,00 | | | | | | |
| 4/1/2018 | $1.000,00 | | | | | | |
| 4/1/2018 | $1.000,00 | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5/1/2018 | $1.000,00 | | | | | | |
| 8/1/2018 | $2.000,00 | | | | | | |
| 10/1/2018 | $1.000,00 | | | | | | |
| 16/1/2018 | $1.000,00 | | | | | | |
| 16/1/2018 | $2.000,00 | | | | | | |
| 19/1/2018 | $2.000,00 | | | | | | |
| 22/1/2018 | $2.000,00 | | | | | | |
| 25/1/2018 | $1.500,00 | | | | | | |
| 26/1/2018 | $1.000,00 | | | | | | |
| 29/1/2018 | $2.000,00 | | | | | | |
| 31/1/2018 | $1.000,00 | | | | | | |
| 2/2/2018 | $1.000,00 | | | | | | |
| 5/2/2018 | $2.000,00 | | | | | | |
| 7/2/2018 | $1.500,00 | | | | | | |
| 9/2/2018 | $1.000,00 | | | | | | |
| 12/2/2018 | $1.000,00 | | | | | | |
| 12/2/2018 | $1.500,00 | | | | | | |
| 13/2/2018 | $1.000,00 | | | | | | |
| 14/2/2018 | $1.000,00 | | | | | | |
| 16/2/2018 | $2.000,00 | | | | | | |
| 21/2/2018 | $3.000,00 | | | | | | |
| 23/2/2018 | $2.000,00 | | | | | | |
| 26/2/2018 | $1.000,00 | | | | | | |
| 28/2/2018 | $2.000,00 | | | | | | |
| 2/3/2018 | $2.000,00 | | | | | | |
| 6/3/2018 | $2.000,00 | | | | | | |
| 7/3/2018 | $1.000,00 | | | | | | |
| 8/3/2018 | $1.000,00 | | | | | | |
| 9/3/2018 | $1.000,00 | | | | | | |
| 13/3/2018 | $2.000,00 | | | | | | |
| 15/3/2018 | $2.000,00 | | | | | | |
| 19/3/2018 | $2.000,00 | | | | | | |
| 26/3/2018 | $1.000,00 | | | | | | |
| 27/3/2018 | $1.500,00 | | | | | | |
| 29/3/2018 | $2.000,00 | | | | | | |
| 30/3/2018 | $2.000,00 | | | | | | |
| 3/4/2018 | $1.500,00 | | | | | | |
| 9/4/2018 | $2.000,00 | | | | | | |
| 10/4/2018 | $1.000,00 | | | | | | |
| 11/4/2018 | $1.000,00 | | | | | | |
| 13/4/2018 | $1.000,00 | | | | | | |
| | | | | | | | |
| | $100.500,00 | | | | | | |